```
            UNITED STATES DISTRICT COURT
             DISTRICT OF MASSACHUSETTS
```

Criminal No. 11-10279-RWZ

```
              UNITED STATES OF AMERICA

                         v.

              CHRISTOPHER S. GODFREY
```

**MEMORANDUM AND ORDER RE:
DEFENDANT CHRISTOPHER S. GODFREY'S BRADY MOTION
(DOCKET ENTRY # 99); DEFENDANT CHRISTOPHER S.
GODFREY'S MOTION FOR A BILL OF PARTICULARS
(DOCKET ENTRY # 100)**

**April 5, 2013**

**BOWLER, U.S.M.J.**

After conducting a hearing on March 12, 2013, this court took the above styled Brady motion (Docket Entry # 99) and the motion for a bill of particulars (Docket Entry # 100) filed by the defendant Christopher S. Godfrey ("the defendant") under advisement.

The Indictment charges the defendant, President of a Florida company known as Home Owners Protection Economics, Inc. ("HOPE"), two officers and a telemarketer ("the defendants") with conspiracy in violation of 18 U.S.C. § 371, wire fraud in violation of 18 U.S.C. §§ 1343 and 2 and mail fraud in violation of 18 U.S.C. §§ 1341 and 2.  The Indictment, which also contains a criminal forfeiture count, additionally charges the defendant with misusing a government seal in violation of 18 U.S.C. §§ 1017

and 2. The Indictment identifies categories of misrepresentations that the defendants made or that they instructed their employees to make:

> to induce financially distressed homeowners looking for a federally funded home loan modification to pay HOPE a $400-$900 up-front fee in exchange for HOPE's home loan modifications, modification services, and "software licenses." Among these misrepresentations were the claims that HOPE would provide essential assistance that the homeowner needed to obtain a home loan modification and that, with HOPE's assistance, the homeowner was virtually guaranteed to receive the modification. Through these and other misrepresentations, HOPE was able to persuade thousands of homeowners to pay more than $3 million in fees to HOPE.
>
> In exchange for these up-front fees, HOPE sent its customers only a do-it-yourself application package, which was virtually identical to the application that the government provides free of charge, and instructed the customers to fill out the application and submit it to their mortgage lender. As the defendants knew, the HOPE customers who did use these forms to apply on their own for loan modifications had no advantage in the application process, and, in fact, most of their applications were denied.

(Docket Entry # 2, ¶¶ 5-6).

I. THE BRADY MOTION (DOCKET ENTRY # 99)

The defendant seeks production by the government of evidence of: (1) "HOPE clients that received successful loan modifications; and" (2) "HOPE clients who received refunds." (Docket Entry # 99). The defendant contends that evidence of successful loan modifications and customer refunds is exculpatory under Brady v. Maryland, 373 U.S. 83, 87 (1963), Giglio v. United States, 405 U.S. 150 (1972), and LR. 116.2. See United States v. Rosario-Peralta, 175 F.3d 48, 53 (1st Cir. 1999) (evidence is

exculpatory under <u>Brady</u> if "it 'is material to guilt or punishment'") (quoting <u>Brady</u>, 373 U.S. at 87).

The government opposes production because the information is not exculpatory. It additionally submits that it produced all of the requested evidence and is under no obligation to review and identify each document that might be relevant to a potential defense. The government also points out that such a review would be time consuming and impractical.

Assuming for purposes of argument that the evidence is exculpatory, this court turns to the government's production. In October 2011, the government states that it made available for the defendant's review "53 hard drives and 30 boxes of documents . . . seized during a search of the HOPE business premises." (Docket Entry # 103). The government thereafter made the hard drives and the documents available for review in Boston at the office of the Internal Revenue Service. Upon request, the case agent provided the defendant with "logical copies"[1] of two of the defendant's hard drives, a HOPE employee's hard drive and four other hard drives. Notably, the government produced approximately 1,400 so called "hot docs." (Docket Entry # 103). These documents consist of documents "the government is most

---

[1] The government explains that, "Logical copies are not exact forensic duplicates, but they are viewable through standard software programs like Microsoft Word." (Docket Entry # 103).

3

likely to use as exhibits at trial."[2] (Docket Entry # 103). Finally, the government represents that it "has not located any HOPE records summarizing which customers did and which did not receive loan modifications." (Docket Entry # 103).

## DISCUSSION

A prosecutor violates a defendant's due process rights under Brady "by failing to disclose material evidence in his possession that is favorable to the defendant." Drumgold v. Callahan, 707 F.3d 28, 38 (1st Cir. 2013). "Evidence is favorable to a defendant if it is either exculpatory or impeaching in nature." Id. at 38-39. The disclosure obligations imposed by Brady also extend to "evidence known only to law enforcement officers and not to prosecutors." Id. at 38; accord Haley v. City of Boston, 657 F.3d 39, 49 (1st Cir. 2011).

In the case at bar, the government adequately complied with LR. 116.1(B) and Brady with respect to the above two requests. It did not hide the requested material in a large scale document production. See U.S. v. Skilling, 554 F.3d 529, 577 (5th Cir. 2009) (dicta noting that "government may not hide Brady material of which it is actually aware in a huge open file in the hope that the defendant will never find it"), vacated in part on other grounds, 130 S.Ct. 2896 (2010). Instead, like the government's

---

[2] The defendant did not disagree with the accuracy of the material aspects of these statements by the government.

production in <u>Skilling</u>, the government provided "hot docs" that it is most likely to use as trial exhibits.  See <u>Id.</u> (finding no <u>Brady</u> violation while noting that "government produced a set of 'hot documents' that it thought were important to its case or were potentially relevant to Skilling's defense").  Accordingly, there was no <u>Brady</u> violation.

II. <u>MOTION FOR BILL OF PARTICULARS (DOCKET ENTRY # 100)</u>

The defendant maintains that the Indictment does not specify:  (1) "the alleged misrepresentations made by Godfrey;" (2) "the specific HOPE customers Godfrey made these representations to; and" (3) "the specific HOPE employees that Godfrey instructed to make misrepresentations."  (Docket Entry # 100).  The government maintains that the 75 paragraph Indictment sufficiently contains the elements of each offense and the nature of the offenses.  It also enables the defendant to plead double jeopardy, according to the government.  (Docket Entry # 104).

DISCUSSION

A motion for a bill of particulars, which is "seldom employed in modern practice," is allowed "only if the accused, in the absence of a more detailed specification, will be disabled from preparing a defense, caught by unfair surprise at trial, or hampered in seeking the shelter of the Double Jeopardy Clause."  <u>United States v. Sepulveda</u>, 15 F.3d 1161, 1192-1193 (1st Cir.

5

1993); accord United States v. Abreu, 952 F.2d 1458, 1469 (1st Cir. 1992) (function of bill "is to provide the defendant with the necessary details of the charges against him to enable him to prepare his defense, to avoid surprise against trial, and to protect against double jeopardy"); United States v. Leach, 427 F.2d 1107, 1110 (1st Cir. 1970); see also Wong Tai v. United States, 273 U.S. 77 (1927).  A bill should only be granted when the indictment is so vague that it does not comply with these purposes.  United States v. Bloom, 78 F.R.D. 591, 599 (E.D.Pa. 1977); see United States v. Andrus, 775 F.2d 825, 843 (7th Cir. 1985).  Moreover, an indictment is ordinarily sufficiently detailed "'if it elucidates the elements of the crime, enlightens a defendant as to the nature of the charge against which [the defendant] must defend, and enables [the defendant] to plead double jeopardy in bar of future prosecutions for the same offense.'"  United States v. Poulin, 588 F.Supp.2d 64, 66 (D.Me. 2008) (quoting United States v. Sepulveda, 15 F.3d at 1192).

   The decision to grant or deny a request rests with the sound discretion of the trial court.  United States v. Abreu, 952 F.2d at 1469  ("grant or denial of a motion for a bill of particulars lies within the sound discretion of the trial judge"); accord United States v. Paiva, 892 F.2d 148, 154 (1st Cir. 1989).  A defendant is not entitled to recover evidentiary matters by filing a motion for a bill of particulars.  See United States v.

Johnson, 504 F.2d 622, 628 (7th Cir. 1974); Overton v. United States, 403 F.2d 444 (5th Cir. 1986); Hemphill v. United States, 392 F.2d 45 (8th Cir. 1968); United States v. Sandler, 462 F.2d 122 (6th Cir. 1972); United States v. Wolfson, 413 F.2d 804, 808 (2nd Cir. 1969) (identity of persons present at time of offense).

The government accurately summarizes the substance of the charges in the Indictment, including the manner and means and the overt acts regarding the conspiracy, and the facts in the Indictment that support the charges. (Docket Entry # 104, pp. 4-5). The Indictment as a whole therefore provides sufficient detail. "[I]t elucidates the elements of the crime[s], enlightens" the defendant about "the nature of the charge[s] against" him and it enables him "to plead double jeopardy in bar of future prosecutions for the same offense[s]." United States v. Sepulveda, 15 F.3d at 1192. Furthermore, contrary to the defendant's position, the government provided discovery in a searchable format. In short, the defendant fails to adequately demonstrate that his own investigation based on the evidence available to him would not be sufficient to prepare an adequate defense, see United States v. Belardo-Quinones, 71 F.3d 941, 943-944 (1st Cir. 1995) (upholding denial of bill of particulars while noting that indictment contained enough information for the defendant to prepare a defense and the record showed no attempts by the defendant to obtain the requested information

7

independently), or to protect him from prejudicial surprise at trial. A bill of particulars identifying in greater detail the misrepresentations by Godfrey, the HOPE customers to whom Godfrey made the misrepresentations and the HOPE employees Godfrey instructed to make misrepresentations is not required.

## CONCLUSION

In accordance with the foregoing discussion, the <u>Brady</u> motion (Docket Entry # 99) and the motion for a bill of particulars (Docket Entry # 100) are **DENIED.**

                        /s/ Marianne B. Bowler
                        **MARIANNE B. BOWLER**
                        United States Magistrate Judge